The briefs of the bill and answers, on which the cause was heard, and which are annexed as a noté to this, present a full statement, and the question made. The argument in favor of the complainant is, .that the Court leans in favor of vesting; that when there is á limitation to the heirs of a person living, this is generally understood to mean, those who are heirs at the time of his death; that at the death of the-wife, in this case, her husband and children were her heirs, and the remainder, as to a moiety of the estate, might vest in them; or if regarded as contingent until the death of the last child, there was no longer contingency, and the remainder must have vested in those who then answered the description of heirs at law.'
It is agreed on all hands, however, that Construction must be made upon the instructions set forth, and the bond, taken together as marriage articles, and that, in construing marriage articles, the only rule, by which the Court is governed, is that of giving effect to the intention of the parties; and if a settlement is made in the very words of the articles, yet, if the legal effect of those words, is not according to the intention, the settlement will be reformed.
A greater latitude is allowed, than in giving construction to wills.; as where the words in a will, would give the father an estate tail, the same words, in articles, shall be restricted to an estate for life: or as in Randall vs. Wallis, 5 Ves. 261, when the intended husband, by articles before marriage, covenanted that he would, within three months after the marriage, convey and assign all his personal estate to certain uses, and by deed of indenture executed after the marriage, he did convey and assign to trustees, “ all the personal estate, and effects of which he was po's- *359 sessed, at the time of the execution of the said articles,” to the same uses, it was held by the Court, that he could not have intended, to tie up every article of his personal property — the furniture of his house — his stock in trade — but that the articles must be taken to relate, to such personal property, as he should leave at his death, andthatto carry out the articles, the settlement should have contained a covenant, that any lands he might purchase should be considered as personal estate. If the terms of these articles had been, upon the husband’s surviving and dying without issue, then as to one moiety, the parson who shall, at that time, answer the description of the wife's heirs at law, there would have been nothing ambiguous, and nothing to prevent the disposition’s having effect. I imagine that no one ever read the words in question, who doubted that such was their meaning, and no other. The words are, “if he survives her, and dies, leaving no issue of the marriage, living at his death, then, as to one half of the property, for the use of such persons, as he shall appoint by his will, and if he make no appointment, then to his heirs at law; as to the other half, to her heirs at law.” The ‘ word “then” plainly relates to the whole of the clause, and in the ordinary and popular acceptation of the terms, they would be taken to mean the persons who shall, at that time, be her heirs at law. And what is the obvious general intention of the parties'? A very liberal disposition is made in favor of the husband, in the event of his surviving his wife, and dying without issue by her, and the plain purpose of the provision was, that the whole of her estate should not, in that event, be lost to her own relations, for the benefit of those who were strangers to her blood.
The legal title of the property never having been transferred to the trustees, the complainant needs no relief. He may enjoy it according to the terms of his contract.
Upon the application of the trustees, or of the parties who may be entitled, at his death, the proper relief will be granted;
It is ordered and decreed, that the bill be dismissed.
The complainant appealed on the ground:
Yeadon & McBeth, Sol’s, for Appellant.
Peronneau, Mazyck & Findley, contra.
That the intention of the parties, as indicated by the terms of the bond, to execute a marriage settlement, was that the heirs should be fixed at her death, or at all events, at the death of her surviving child, unmarried and without issue.